1
2
3
4
5
6
7                **IN THE UNITED STATES DISTRICT COURT FOR THE**
8                         **EASTERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| VICTOR LAMONT BROWN, ) | 1:03-cv-06609-AWI |
| ) | (1:98-cr-05294-AWI) |
|       Petitioner, ) | |
| ) | ORDER DENYING MOTION TO |
|   v. ) | VACATE, SET ASIDE OR |
| ) | CORRECT SENTENCE |
| UNITED STATES OF AMERICA, ) | |
| ) | (Doc. 246) |
|       Respondent. ) | |
| _____ ) | |

**I. INTRODUCTION**

Petitioner Victor Lamont Brown ("Petitioner") has filed a motion to vacate, set aside or correct

sentence pursuant to 28 U.S.C. § 2255.  For reasons discussed below, the motion shall be denied.

**II. FACTS AND PROCEDURAL BACKGROUND**

On November 9, 2000, Petitioner was found guilty by a jury on three counts of (1) conspiracy to

distribute, and possess with intent to distribute, cocaine under 21 U.S.C. §§ 846 and 841(a)(1); (2)

possession of cocaine with intent to distribute under 21 U.S.C. § 841(a)(1); and (3) criminal

forfeiture of $1,090,968.00 under 21 U.S.C. § 853.  On January 22, 2001, Petitioner was sentenced

to life imprisonment on the first two counts to be served concurrently for a total term of life,

followed by a 120-month term of supervised release.  On November 14, 2003, following an unsuccessful appeal,[1] Petitioner filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of trial and appellate counsel.  The government filed its opposition to Petitioner's § 2255 motion on January 23, 2004.

On October 2, 2006, Petitioner filed a notice of change of address stating he was housed at United States Penitentiary (USP) Lewisburg, P.O. Box 1000, Lewisburg, PA 17837.  On September 4, 2007, Petitioner filed a second notice of change of address stating he was housed at USP Victorville, P.O. Box 5500, Adelanto, CA 92310.  On April 13, 2009, Petitioner filed a letter requesting a status report from the clerk of court.  The letter reflected the Adelanto address.

On May 19, 2009, Petitioner's criminal case was reassigned to this Court.  The clerk of court served notice of the reassignment on Petitioner by mail.  On May 27, 2009, the notice of reassignment mailed to Petitioner was returned to the Court marked undeliverable and unable to forward.  On September 11, 2009, Petitioner's section 2255 action was also reassigned to this Court. Again, the clerk of court served notice of the reassignment on Petitioner by mail.  On September 21, 2009, the second notice of reassignment mailed to Petitioner was returned to the Court marked undeliverable and unable to forward.  In an order issued July 21, 2010 and filed July 22, 2010, the Court, in the absence of further correspondence from Petitioner, dismissed Petitioner's section 2255 action for failure to prosecute or advise the Court of a current address as required by Local Rule 183(b).  A copy of the order was mailed to Petitioner on July 22, 2010 but was also returned.

On July 7, 2011, Petitioner filed a motion pursuant to Federal Rule of Civil Procedure 60(b) for relief from the Court's July 21, 2010 order dismissing his section 2255 action, alleging the dismissal was taken against him on ground of mistake, inadvertence or excusable neglect.  The government did not file a written opposition to Petitioner's Rule 60(b) motion for relief.

On December 23, 2011, the Court vacated its July 21, 2010 order dismissing Petitioner's

---

[1] *See U.S. v. Brown,* 40 Fed.Appx. 471 (9th Cir. 2002) (unpublished) (affirming sentence); *Brown v. U.S.,* 537 U.S. 1037, 123 S.Ct. 571, 154 L.Ed.2d 457 (2002) (denying certiorari); *Brown v. U.S.,* 537 U.S. 1150, 123 S.Ct. 959, 154 L.Ed.2d 859 (2003) (denying rehearing).

section 2255 action and reinstated the action to the active calendar of the Court.

### III. LEGAL STANDARD

" 'In general, [28 U.S.C.] § 2255 provides the exclusive procedural mechanism by which a federal prisoner may test the legality of his detention.' "  *Ivy v. Pontesso,* 328 F.3d 1057, 1059 (9th Cir. 2003) (quoting *Lorentsen v. Hood,* 223 F.3d 950, 943 (9th Cir. 2000)).  Under section 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum imposed by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.  If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  *Id.,* § 2255(b).  "In determining whether a hearing and findings of fact and conclusions of law are required, '[t]he standard essentially is whether a movant has made specific factual allegations that, if true, state a claim on which relief could be granted.'  Under this standard, a district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.' "  *U.S. v. Withers,* 638 F.3d 1055, 1062-63 (9th Cir. 2011) (quoting

1   *United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir. 1984)) (internal citations omitted).

2

3                                      **IV. DISCUSSION**

4

5   ***A. Ineffective assistance of counsel*** – In his motion, Petitioner raises nineteen specific claims[2]

6   involving allegations of ineffective assistance by trial and/or appellate counsel.  "The Sixth

7   Amendment guarantees criminal defendants the effective assistance of counsel." *Yarborough v.*

8   *Gentry,* 540 U.S. 1, 5, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003).  "In order to establish ineffective

9   assistance of counsel, a petitioner must prove both deficient performance by his counsel and

10  prejudice caused by the deficiency.  To demonstrate deficient performance [the petitioner] must

11  show that counsel's performance 'fell below an objective standard of reasonableness' based on 'the

12  facts of the particular case [and] viewed as of the time of counsel's conduct.' " *Gonzalez v. Wong,*

13  667 F.3d 965, 987 (9th Cir. 2011) (quoting *Strickland v. Washington,* 466 U.S. 668, 688-90, 104

14  S.Ct. 2052, 80 L.Ed.2dd 674 (1984)).  The court "must apply a' strong presumption' that counsel's

15  representation was within the 'wide range' of reasonable professional assistance.  The [petitioner]

16  bears the burden of showing 'that counsel made errors so serious that counsel was not functioning

17  as the 'counsel' guaranteed [petitioner] by the Sixth Amendment.' " *James v. Schriro,* 659 F.3d 855,

18  879-80 (9th Cir. 2011) (quoting *Strickland, supra,* at 687, 689).  "In order to establish prejudice [the

19  petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional

20  errors, the result of the proceeding would have been different.  A reasonable probability is a

21  probability sufficient to undermine confidence in the outcome.' " *Gonzalez, supra,* 667 F.3d at 987

22  (quoting *Strickland, supra,* 466 U.S. at 694).  "Because failure to meet either prong is fatal to [the

23  petitioner's] claim, there is no requirement that [the court] 'address both components of the inquiry

24  if the defendant makes an insufficient showing on one.' " *Id.*

25  _____

26       [2] Although only nineteen claims were asserted, they were labeled 1 through 13 and 15

27  through 20; a fourteenth claim was inadvertently omitted.

28                                              4

1

2  *1. Failure to suppress inculpatory statements by pretrial motion or object to evidence of such*

3  *statements at trial* – As a threshold matter, Petitioner contends trial counsel were ineffective because

4  they failed to (1) file pretrial motions to suppress certain inculpatory statements made by Petitioner

5  to law enforcement and (2) object to the admission of such statements into evidence during the

6  course of trial.  Petitioner's theory of suppression is this: On the third day of trial, DEA Special

7  Agent Alan Lopez, one of the agents who interviewed Petitioner after his arrest on August 7, 1998,

8  testified Petitioner spoke to him over the course of several days about the narcotics that were found

9  in his possession and the drug-related activities he had been conducting.  Lopez testified that during

10  the first interview, Petitioner explained how he did business, including how he had been able to

11  make money in drug trafficking, and also provided the names of the individuals who were supplying

12  him with cocaine.  Lopez's testimony was not challenged by counsel during trial, and no pretrial

13  motions were filed to suppress Petitioner's statements or determine whether they were made without

14  the benefit of Miranda warnings.  From this, Petitioner asserts counsel were ineffective because such

15  motions, he contends, would necessarily have revealed that the DEA failed to advise Petitioner of

16  his *Miranda* rights or obtain a valid waiver of those rights before interrogating him.  Not so.

17     "To show prejudice under *Strickland* from failure to file a motion, [the petitioner] must show

18  that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as

19  meritorious, and (2) had the motion been granted, it is reasonable that there would have been an

20  outcome more favorable to him."  *Wilson v. Henry,* 185 F.3d 986, 990 (9th Cir. 1999) (citing

21  *Kimmelman v. Morrison,* 477 U.S. 365, 373-74, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)).  Petitioner

22  suggests that a motion to suppress would have been granted because any asserted waiver of his rights

23  was not voluntary, knowing or intelligent, and thus invalid, under the totality of the circumstances

24  test.  "For inculpatory statements made by a defendant during custodial interrogation to be

25  admissible in evidence, the defendant's 'waiver of Miranda rights must be voluntary, knowing, and

26  intelligent.' " *U.S. v. Garibay,* 143 F.3d 534, 536 (9th Cir. 1998) (internal citations omitted).  "The

27

28                                          5

inquiry has two distinct dimensions.  First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d (1986).  Petitioner, however, has not explained how his waiver might have been involuntary or unknowing in any sense,  nor has he identified evidence his attorneys might have raised to show this was the case.  Petitioner has also not alleged any coercive circumstance other than the simple fact of custody and interrogation.  Consequently, Petitioner cannot show that a motion to suppress his statements would reasonably have been granted by the trial court, let alone resulted in an outcome more favorable to him.  Petitioner suggests he was "coerced" into making a statement because he believed he had no choice but to talk if he wanted the government to release his girlfriend and father, who had also been arrested as part of the government's operation.  Problematically for Petitioner, nothing suggests the government was holding his girlfriend and father for the purpose of extracting a confession from him.  *Compare U.S. v. Tingle,* 658 F.2d 1332, 1335-36 (9th Cir. 1981) (confession held involuntary where interrogators threatened to take away petitioner's child if she refused to cooperate).

Petitioner further suggests his waiver was invalid because he did not execute any written waiver forms or make an oral waiver on tape.  "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably necessary or sufficient to establish waiver.  The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).  At trial, Lopez testified that Petitioner *was* advised of his *Miranda* rights at the beginning of the first interview and stated he understood them, even though the interview itself, in accordance with DEA

policy, was not recorded.  Lopez further testified he gave Petitioner *Miranda* warnings prior to each of the subsequent interviews.  Lopez's testimony remained consistent between direct and cross-examination, and was corroborated by two reports prepared by Fresno Police Department Detectives J. A. Galvan and Pete Santellano showing Petitioner was advised of his constitutional rights, stated he understood them and said he wanted to make a deal.  While those reports do not appear to have been introduced into evidence at trial, the government contends – and Petitioner does not dispute – the reports were produced in discovery.  Trial counsel, having investigated the facts before trial, presumably realized that under the circumstances, there was no reasonable possibility Petitioner's statements would be suppressed because the matter would hinge on issues of credibility, which the trial court would likely have resolved against Petitioner, and the filing of a motion to suppress would therefore have been futile.  Counsel's decision to abstain from filing a futile motion is a matter of professional judgment that does not fall below an objective standard of reasonableness.  *See Lowry v. Lewis,* 21 F.3d 344, 346 (9th Cir. 1994).  The same is true for counsel's decision not to object to the admission of Petitioner's statements (*see Rupe v. Wood,* 93 F.3d 1434, 1445 (9th Cir. 1996)), particularly where, as here, the bulk of the evidence suggests the results of the proceeding would have been the same even if the inculpatory statements had been excluded.  Accordingly, the Court finds trial counsel's failure to file pretrial motions to suppress Petitioner's statements or object to admission of such statements at trial did not rise to the level of ineffective assistance.

***2. Failure to move to preserve and compel production of interviewer's rough notes*** – Petitioner further contends trial counsel were ineffective because they failed to move to preserve and compel production of rough notes made by Lopez during Petitioner's interviews, which Petitioner contends were inconsistent with the interviewers' final reports and would have validated Petitioner's claim that his confession was not the product of a knowing and voluntary waiver of his *Miranda* rights. The Court disagrees.  Even assuming counsel's failure to preserve and obtain the rough notes fell below an objective standard of reasonableness, Petitioner has offered no evidence to establish

prejudice.  Nothing suggests the notes were exculpatory or would have controverted the testimony of Lopez.  Petitioner's conclusory assertion that the rough notes would have shown an invalid waiver, without more, does not establish the notes would have been helpful to the defense, and is therefore insufficient to show the outcome would have been more favorable to Petitioner had counsel obtained the notes.  To the extent Petitioner contends counsel's failure to move to compel production of the notes in discovery rendered counsel ineffective simply because counsel was unprepared for trial, the claim likewise fails, as Petitioner has not explained how, had counsel possessed the notes prior to trial, counsel would have prepared differently for trial or modified their trial strategy.

The notes, insofar as shown by Petitioner, were significant only because they could be used to impeach Lopez.  However, the record reflects that defense counsel extensively cross examined Lopez about the (non)existence of the notes, going so far as to elicit testimony from Lopez that (1) he believed it was imperative the notes be retained, given the severity of the allegations and the fact it was not DEA policy to record interviews; and (2) the notes were accidentally lost when he shipped boxes of documents from Fresno, California to his new office in Bogota, Colombia.  In other words, counsel made use of the government's failure to provide the notes for impeachment purposes.  Thus, Petitioner cannot show that he was prejudiced by counsel's failure to obtain the notes.  Accordingly, the Court finds trial counsel's failure to move to preserve or compel production of rough notes made by Lopez during Petitioner's interviews did not rise to the level of ineffective assistance.

**3. *Trial counsel's conflict of interest*** – Petitioner further contends that one of his trial attorneys, Jerome P. Mullins, had an actual conflict of interest that adversely affected Mullins's representation of Petitioner and prejudiced the outcome of the proceedings.  "An 'actual conflict' results when counsel 'actively represented conflicting interests.' "  *Hovey v. Ayers,* 458 F.3d 892, 908 (2006) (quoting *Strickland, supra,* 466 U.S. at 692).  "To establish ineffective assistance of counsel based on a conflict of interest, [the petitioner] must show an actual conflict of interest that adversely affected counsel's performance . . . . [¶] . . . [¶] To show an actual conflict resulting in an adverse

effect, [the petitioner] must demonstrate 'that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.' " *Id*. (quoting *United States v. Wells,* 394 F.3d 725, 733 (9th Cir. 2005)).  Petitioner has not identified any strategies or tactics that might have been pursued but were not, nor has he identified any actual, legal conflicts of interest Mullins may have had.  Rather, inasmuch as the Court can discern from the pleadings, the "conflict of interest" alleged by Petitioner refers to the conflict Petitioner had with Mullins over how to strategize for trial.  In particular, Petitioner contends there was a conflict because he and Mullins disagreed about how to investigate the case, prepare a defense or whether to interview certain witnesses.  Problematically for Petitioner, disagreements between client and counsel over trial strategy cannot support an ineffective assistance claim.  *People v. Santos,* 741 F.2d 1167, 1169 (9th Cir. 1984) (per curiam).  To the extent Petitioner intends to suggest assistance was ineffective *because* Mullins did not investigate the case, prepare a defense or interview witnesses, Petitioner has nonetheless failed to explain what Mullins should have done but did not.  He has not described the investigations he believes should have been conducted.  He has not identified the witnesses he believes should have been located and interviewed.  He has offered no argument or evidence to show Mullins failed to present a defense.  Thus, Petitioner cannot establish the requisite prejudice.

In *U.S. v. Moore,* 159 F.3d 1154 (9th Cir. 1998), the Ninth Circuit held that a complete breakdown of the attorney-client relationship resulting from an irreconcilable conflict between a defendant and his or her attorney *could* form the basis of a claim for ineffective assistance of counsel.  *Id*. at 1158-61.  But the alleged conflict between Petitioner and Mullins bears no resemblance to the conflict found to be irreconcilable in *Moore*.  The attorney-client relationship in *Moore* was marred by an " 'atmosphere of mistrust[ ] [and] misgivings[.]' " *Id*. at 1159.  The defendant testified, among other things, that his attorney failed to timely inform him of the government's rejection of his counteroffer to the government's plea offer; that he and the attorney had a " 'serious argument' " over the attorney's handling of the case; and that he was enraged after

1   the attorney failed to meet with him before the government's plea offer expired or inform him that

2   a co-defendant had accepted a plea agreement. *Id*. The defendant further claimed "he was denied

3   an opportunity to review the proposed plea bargain because [the attorney] would not read it to him

4   in jail," and that the attorney "admitted to having done nothing but interview [the defendant's] son

5   . . . ." *Id.* Counsel testified the defendant had physically threatened him and threatened to sue him

6   for malpractice. *Id.* at 1159, 1160. By contrast, the alleged conflict between Petitioner and Mullins,

7   as noted above, concerned only a disagreement about how to investigate and prepare for trial. Indeed,

8   the Ninth Circuit, in affirming the trial court's denial of Petitioner's eve-of-trial motion to discharge

9   Mullins and substitute new counsel, expressly rejected Petitioner's assertion that "his conflict with

10  Mullins was so great that it resulted in a total lack of communication preventing an adequate

11  defense." *U.S. v. Brown, supra,* 40 Fed.Appx. at 474. The court observed: "Brown challenged only

12  Mullins' choice of defense strategy. Brown voiced no dissatisfaction regarding the frequency of

13  Mullins' visits, telephone contacts, or written communications. To the contrary, Brown's complaints

14  about Mullins' performance indicated that Brown and Mullins were communicating, albeit

15  disagreeing about what defense strategy to pursue. [¶] Defendants have no Sixth Amendment right

16  to a 'meaningful relationship' with counsel . . . . [W]hen a defendant and counsel are

17  communicating, but disagreeing about fundamental issues of trial strategy, the conflict between them

18  is not so great as to require the substitution of counsel." *Id*. at 474-75. Even now, Petitioner fails

19  to explain how his conflict with Mullins might have transcended disagreements over strategy.

20      Lastly, Petitioner contends there was a conflict of interest in that, two days before trial,

21  Mullins told Petitioner "he wanted an additional $100,000 or he would not do anything else on the

22  case." Petitioner further claims that when he told Mullins he did not have the money, Mullins said

23  he no longer wanted to represent Petitioner. Again, one must show an actual conflict adversely

24  affecting counsel's performance to show ineffective assistance of counsel. *Hovey, supra,* 458 F.3d

25  at 908. Problematically for Petitioner, a client's inability to fully compensate counsel for legal

26  services hardly constitutes the existence of an actual conflict. *See U.S. v. O'Neil,* 118 F.3d 65, 71

27

28                                          10

(2d Cir. 1997) ("[F]ailure to pay fees or an attorney's motion to withdraw for his client's failure to pay, without more, [does not] give[ ] rise to a conflict of interest . . . . There is little question that a defendant's failure to pay fees may cause some divisiveness between attorney and client, but we presume that counsel will continue to execute his professional and ethical duty to zealously represent his client, notwithstanding the fee dispute").  Even if the Court were to accept Petitioner's proposition that the fee dispute resulted in an actual conflict, Petitioner has presented no evidence to suggest the dispute adversely affected Mullins's representation of Petitioner.  As a result, Petitioner cannot establish ineffective assistance of counsel based on a conflict of interest.

*4.Failure to raise defenses at trial* – Petitioner further asserts trial counsel were ineffective because they failed to raise and/or abandoned the defenses of necessity and simple possession of cocaine without the intent to distribute.  Having reviewed the record, the Court finds, contrary to Petitioner's contention, a defense of lack of specific intent was raised by counsel and even argued to the jury. The Court further finds this is a not a case where a necessity defense would have been proper.

To be entitled to a necessity defense, Petitioner had to show at trial " (1) that he was faced with a choice of evils and chose the lesser evil; (2) that he acted to prevent imminent harm; (3) that he reasonably anticipated a causal relation between his conduct and the harm to be avoided; and (4) that there were no other legal alternatives to violating the law." *United States v. Bibbins,* 637 F.3d 1087, 1094 (9th Cir. 2011) (citing *United States v. Arellano-Rivera,* 244 F.3d 1119, 1125-26 (9th Cir. 2011)).  The defense "can be asserted only by a defendant who was confronted with such a crisis as a personal danger, a crisis which did not permit a selection from among several solutions, some of which did not involve criminal acts." *United States v. Dorrell,* 758 F.2d 427, 432 (9th Cir. 1985) (quoting *United States v. Seward,* 687 F.2d 1270, 1276 (10th Cir. 1982)).  "[I]t is . . . based on a real emergency.'  Consequently, 'if there was a reasonable, legal alternative to violating the law,' the defense fails." *Id.* at 431 (internal citations omitted).  A necessity defense is an affirmative defense (*Raich v. Gonzalez,* 500 F.3d 850, 861 (9th Cir. 2007)) that the defendant must prove by a

1   preponderance of the evidence. *United States v. Cruz,* 554 F.3d 840, 849 (9th Cir. 2009).

2          Petitioner contends that if a necessity defense had been raised, he would have been able to

3   show the following: Tracy Jackson, an employee of Petitioner's at radio station KIAA, had stolen

4   $75,000 from Charles Young and used the funds to buy cocaine for resale.  Petitioner, angry that one

5   of his employees was involved in drug trafficking and jeopardizing his company ("Century City

6   Media"), called Jackson, met with him at his house, searched the house for drugs and found six

7   kilograms of cocaine.  Jackson admitted the cocaine was given to him on consignment by Pablo (last

8   named unknown).  Petitioner took the drugs and called Pablo using Jackson's cell phone, but could

9   not contact police for fear of violating his probation.  Petitioner then contacted his father, who agreed

10  to allow Petitioner to keep the drugs at his house.  At some point Petitioner was contacted by Sergio

11  Nunez, who told Petitioner that Pablo was his employee.  Nunez demanded money or the cocaine.

12  Petitioner declined and said it was Jackson's problem.  Petitioner eventually returned home and told

13  his wife he would report Jackson to the police, but would wait until the next morning out of concern

14  for his daughter's safety.  However, Petitioner was arrested before he could go to the police.

15         Problematically for Petitioner, the foregoing facts hardly support the elements of a necessity

16  defense.  First, no evidence was offered to show Petitioner needed to take the cocaine to prevent

17  imminent harm, either to himself or to another person.  Second, Petitioner failed to establish he

18  lacked any legal alternative to violating the law.  If the cocaine was Jackson's, Petitioner could have

19  informed law enforcement about the cocaine to prevent its distribution instead of taking it himself.

20  But Petitioner never attempted to contact the police.  Third, Petitioner has not explained how he was

21  justified in taking the cocaine.  The possibility Jackson had purchased the cocaine to start a drug

22  trafficking operation would not have constituted "justification" for Petitioner's actions.  In light of

23  these circumstances, there was nothing unreasonable about the failure to argue necessity.

24         In addition, the record shows counsel attempted to defend Petitioner by introducing evidence

25  to negate the elements of the charged offenses.  Asserting a defense of necessity would have been

26  counterproductive because, like all justification defenses, it would have required Petitioner to admit

27

28                                                    12

his actions satisfied the elements of the charged offenses. *People v. Bolden,* 217 Cal.App.3d 1591, 1601, 266 Cal.Rptr. 724 (1990). Counsel's pursuit of one defense theory at the expense of another is the type of strategic decision the Ninth Circuit has found not to be unreasonable. *See Butcher v. Marquez,* 758 F.2d 373, 376-77 (9th Cir. 1985). Accordingly, the Court finds Petitioner has failed to show trial counsel's performance fell below an objective standard of reasonableness or there was a reasonable probability the results of the proceeding would have been different had a necessity defense been raised. Petitioner further asserts counsel were ineffective for failing to request a jury instruction on a necessity defense. Given that Petitioner cannot point to any evidence in the record to support such a defense, the instruction would likely not have been given even if requested. As a result, counsel's failure to request the instruction cannot be deemed a deficient performance.

***5. Failure to object to and/or challenge hearsay statements*** – Petitioner further contends trial counsel were ineffective for failing to object to (and appellate counsel ineffective for failing to challenge on direct appeal) Lopez's trial testimony introducing statements allegedly made to him by certain individuals. Petitioner contends Lopez obtained statements of co-defendants or unindicted co-conspirators from interviews with Troy Boyd, Ricky Gray, Sergio Nunez and Tracey Jackson, which he repeated at trial. From this, Petitioner contends Lopez testified about impermissible hearsay matters which should have been objected to and/or challenged on appeal. Petitioner, however, has not identified any portion of the trial transcript where this alleged testimony may be found. The Court has reviewed Lopez's testimony and finds the only statements testified to by Lopez were statements made to him by Petitioner. Petitioner's contention is simply meritless.

***6. and 7. Failure to compel production by the government of* Brady *materials/failure to challenge the government's non-production of* Brady *materials*** – Petitioner further contends trial counsel were ineffective in failing to compel production of certain exculpatory materials allegedly possessed by the government in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215

(1963).  In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

Here, Petitioner contends counsel should have demanded production of all rough notes made by Lopez during his interviews of Petitioner, any and all reports filed by other officers who were present during the interviews and, lastly, other unspecified *Brady* materials "impeaching Lopez and exonerating [not inculpating]" Petitioner.  As the Court concluded in its analysis of Petitioner's second claim above, counsel's failure to compel production of the rough notes did not rise to the level of ineffective assistance.  In addition, Lopez testified the notes were lost in shipment from Fresno to Colombia, and were therefore not in the government's possession.  As such, the government could not have been guilty of a *Brady* violation for failing to produce the notes.  As to reports filed by other officers present at the interviews, the evidence shows there were only two – the reports prepared by Galvan and Santellano.  However, as the Court further noted, the government contends – and Petitioner does not dispute – these reports *were* produced.  The reports also corroborated Lopez's version of events, and were therefore not favorable to Petitioner.  The Court further finds Petitioner's conclusory allusions to various materials purportedly impeaching Lopez and exonerating Petitioner insufficient to establish a *Brady* violation by the government for failing to produce such materials.  Absent some explanation of what these items were and how they might have been favorable to the defense, counsel was not ineffective for failing to demand them.

Petitioner further contends counsel were ineffective in failing to challenge the government's non-production of *Brady* materials showing that Tracey Jackson admitted to owning the six kilograms of cocaine that were found at the residence of James Brown, Petitioner's father.

Petitioner, however, has failed to identify what materials were allegedly not produced.  The evidence submitted by the government in opposition to Petitioner's section 2255 motion shows that at least one piece of evidence indicating Jackson's ownership of the cocaine – a Fresno Police Department follow-up narrative prepared by Detective D. Vasquez – was produced in discovery.  Accordingly, the Court finds no merit to Petitioner's assertion that counsel were ineffective for failing to compel the government's production or challenge the government's non-production of *Brady* materials.

***8. Failure to locate and interview witnesses*** – Petitioner further contends trial counsel were ineffective because they failed to investigate witnesses essential to the defense, contending, "[W]hen a defendant such as Brown posits plausible factual and legal defenses to charges subjecting him to life imprisonment, trial counsel sure better interview defense witnesses, hire investigators, file pretrial motions and present defense witnesses and a defense case.  Merely recalling government witnesses as hostile defense witnesses was not a trial strategy whatsoever."  Counsel's failure to locate and interview certain witnesses, Petitioner contends, amounted to ineffective assistance.  The Court is not persuaded.  Petitioner has not identified the witnesses he believes should have been located and interviewed.  He has presented no argument or evidence to show these witnesses would have been called to testify and that their testimony would have been relevant and favorable to the defense.  He has not shown counsel even knew or should have known of the witnesses' existence.  Thus, Petitioner cannot establish prejudice from counsel's failure to investigate such witnesses.

***9. Failure to make opening statement*** – Petitioner further contends counsel were ineffective because they failed to make an opening statement to the jury.  The record reflects that Mullins chose to reserve his right to make an opening statement, which he eventually made on the fifth day of trial, at the opening of the defense case and after the government had rested.  Thus, Petitioner's contention is meritless.  Defense counsel often defer their opening statements until the close of the prosecution's case-in-chief; "[t]he decision whether to reserve opening statement is a matter of trial tactics and

strategy[.]" *People v. Davenport,* 11 Cal.4th 1171, 1237, 906 P.2d 1068 (1995) (abrogated on other ground by *People v. Griffin,* 33 Cal.4th 536, 15 Cal.Rptr.3d 743, 93 P.3d. 344 (2004)).

***10. Prejudicial variance/failure to request multiple conspiracies instruction*** – Petitioner further contends, "Trial counsel failed to object to multiple conspiracies charged in the superseding indictment against defendant or file motions to dismiss or election of counts . . . . [¶] . . . Specifically, Mullins' failure to notice, object to and/or appeal from multiple conspiracies charged in the superseding indictment [inclusive of failure to file motions to dismiss/acquit/election of counts at or before trial] was prejudicial as the error was of a critical nature because the jury was furnished with substantially inaccurate information that may have affected its deliberation when it considered the charged offense and lesser offenses." The Court has reviewed the initial indictment and the first, second and third superseding indictments and finds only a single conspiracy was ever alleged; none of the indictments alleged multiple conspiracies. Thus, counsel's failure to object to or move to dismiss the "multiple conspiracies charged" could not have been unreasonable or prejudicial.

What Petitioner presumably intended to argue, inasmuch as the Court can discern from other statements in the motion, is that counsel were ineffective for failing to object to or move to dismiss the *single conspiracy* charged in the indictments when the evidence established only the existence of *other, unindicted conspiracies* of which Petitioner was not a member. "Under the grand jury clause of the fifth amendment, a defendant has a right to be tried only on the grand jury's indictment. This requirement serves the notice-related functions of protecting against unfair surprise, enabling the defendant to prepare for trial and permitting the defendant to plead the indictment as a bar to later prosecutions. Requiring the proof to remain true to the indictment enables the grand jury to serve its function of protecting the citizenry." *U.S. v. Olano,* 62 F.3d 1180, 1193-94 (9th Cir. 1995) (internal citations and quotations omitted). "[I]f the indictment charges jointly tried defendants with participation in a single conspiracy, but the evidence reveals multiple, discrete conspiracies, such a variance of proof may be so prejudicial as to require reversal." *U.S. v. Kenny,* 645 F.2d 1323, 1334

16

(9th Cir. 1981); *see Olano, supra,* 62 F.3d at 1194 ("A variance occurs when the evidence offered at trial proves facts that are materially different from those alleged in the indictment").

"A conspiracy is 'an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and requisite intent to commit the underlying substantive offense.' To establish the existence of a single conspiracy, rather than multiple conspiracies, the government must prove that an overall agreement existed among the conspirators. The evidence must show that each of the defendants was involved. A formal agreement is not necessary; rather the agreement may be inferred from the defendants' acts pursuant to the scheme, or other circumstantial evidence. A single conspiracy may involve several subagreements or subgroups of conspirators." *U.S .v Bibbero,* 749 F.2d 581, 587 (9th Cir. 1984) (internal citations omitted). The Court has reviewed the record and finds sufficient evidence to convict Petitioner of the conspiracy charged in the third superseding indictment. The Court further finds the evidence was consistent with, not materially different, from the indictment. Petitioner has not explained how the evidence might have been at once insufficient for the jury to find the single charged conspiracy but sufficient for it to find other unindicted conspiracies. Accordingly, no variance existed.

Petitioner further contends Mullins was ineffective because he did not request special jury instructions regarding the existence of multiple conspiracies at the close of evidence despite a variance between the evidence and the facts alleged in the third superseding indictment. "If it is possible under the evidence for the jury to find that multiple conspiracies existed, then the [trial] court should instruct the jury on the issue." *U.S. v. Eubanks,* 591 F.2d 513, 518 (9th Cir. 1979) (citing *U.S. v. Perry,* 550 F.2d 524, 533 (9th Cir. 1997)). An instruction should also be given if there is a variance between the indictment for a single conspiracy and proof of multiple conspiracies. *See U.S. v. Shabani,* 48 F.3d 401, 403 (9th Cir. 1995); *see also U.S. v. Chen Chiang Liu,* 631 F.3d 993, 1000 (9th Cir. 2011) ("A multiple conspiracy jury instruction is appropriate if an indictment 'charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies

unrelated to the overall conspiracy charged in the indictment").  "In determining whether there was such variance, [the court] view[s] the evidence in the light most favorable to the prosecution to see whether any rational jury could have found a single conspiracy beyond a reasonable doubt."  *Id.*  As noted above, there was no variance here.  Even if there were, absent argument or evidence to suggest the jury would have acquitted him of the conspiracy count had a multiple conspiracies instruction been given, Petitioner cannot show prejudice from counsel's failure to request the instruction.  Thus, counsel's failure to request the instruction did not rise to the level of ineffective assistance.

***11. Failure to request lesser included offense instruction*** – Petitioner further contends trial counsel were ineffective by not requesting that the jury be instructed on the offense of simple possession of cocaine (21 U.S.C. § 844(a)) as a lesser offense included in the offense of possession of cocaine with intent to distribute (21 U.S.C. § 841(a)(1)).  "A defendant is entitled to a lesser-included instruction if he shows that: 1) 'the offense on which instruction is sought is a lesser-included offense of that charged' and 2) that the 'jury rationally could conclude that the defendant was guilty of the lesser-included offense but not of the greater.' "  *U.S. v. Torres-Flores,* 502 F.3d 885, 887 (9th Cir. 2007) (quoting *U.S. v. Pedroni,* 958 F.2d 262, 267-68 (9th Cir. 1992)).  Petitioner contends that if an instruction on the lesser included offense had been given, the jury could rationally have found him guilty of simple possession but not possession with intent to distribute.  The Court disagrees.

The evidence Petitioner possessed cocaine with the intent to distribute was overwhelming.  By contrast, the only evidence that tended to exculpate Petitioner was his own testimony.  On this record, a rational jury could not have acquitted Petitioner of possession with intent to distribute but convicted him of simple possession.  Petitioner also appears to have forgotten the jury *did* convict him of possession with intent to distribute; that the jury *might* have convicted him of simple possession does not change this fact.  Absent argument or evidence to suggest an instruction on the lesser included offense would somehow have caused the jury to acquit him of the greater offense, Petitioner cannot show prejudice from counsel's failure to request the instruction.

In addition, the evidence of possession appears to have been stronger than that of intent. Presumably, this was why counsel focused on negating intent instead of requesting an instruction on simple possession.  This approach, if successful, would have resulted in an acquittal on the second substantive count, whereas had the instruction at issue been requested and given, a conviction would likely have resulted even if the jury agreed there was no intent.  Counsel was not ineffective in taking this approach, as the approach constituted the type of strategic decision warranting "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and to which judicial scrutiny is "highly deferential." *Strickland, supra,* 466 U.S. at 689.

***12. Failure to request buyer-seller relationship instruction, file post-trial motions for acquittal and new trial or challenge venue for conspiracies charged in the indictment*** – Petitioner further contends trial counsel were ineffective because they failed to request the jury be instructed on a buyer-seller relationship defense in addition to an actual conspiracy to distribute, and possess with intent to distribute, cocaine.  There is no merit to this argument.  "A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it supported by law and has some foundation in the evidence." *U.S. v. Mason,* 902 F.2d 1434, 1438 (9th Cir. 1990).  Counsel never argued during the trial that the evidence showed only a buyer-seller relationship among Petitioner and his alleged co-conspirators.  Petitioner suggests counsel did not raise such a defense because they failed to infer a buyer-seller relationship from the evidence, but has not pointed to any evidence to support the possibility he had only a buyer-seller relationship with his alleged co-conspirators.

A buyer-seller relationship is typically implicated only when there is evidence of a single, isolated transaction involving small quantities of drugs suitable for personal consumption.  *See United States v. Houser,* 929 F.2d 1369, 1372 (9th Cir. 1991) (abrogated on other grounds by *Buford v. United States,* 532 U.S. 59, 64-66, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001)); *see also United States v. Lennick,* 18 F.3d 814, 819 (9th Cir. 1994).  In this case, several witnesses testified that Petitioner was involved in multiple cocaine transactions.  Witnesses further testified that on several

19

occasions, Petitioner had purchased dozens of kilograms of cocaine from his supplier and arranged

for them to be shipped to other states.  The evidence Petitioner dealt in large quantities of drugs and

had them shipped across state lines supports an inference that the drugs were intended for

distribution and resale, not personal consumption.  *See United States v. Mincoff,* 574 F.3d 1186,

1193-94 (9th Cir. 2009).  Thus, it was not deficient for counsel to refrain from presenting a buyer-

seller defense.  Counsel was also not ineffective for failing to request a buyer-seller relationship

instruction because, given the evidence, the request would have been rejected by the trial court.

In the Court's view, even if the evidence were sufficient to support the existence of a buyer-

seller relationship, separate buyer-seller instructions were neither necessary nor required because the

conspiracy instructions given by the trial court adequately encompassed a buyer-seller defense.  The

trial court instructed the jury on the law relating to the elements of a conspiracy as follows:

> "A conspiracy is a kind of criminal partnership – an agreement of two or more persons to commit one or more crimes.  The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.  [¶] For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy.  It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another.  You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

> One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy.  Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators.  On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator.  Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists."

These instructions accurately state the law on conspiracy, and the elements necessary to prove a

conspiracy would have been lacking if the evidence showed Petitioner was simply a buyer or seller.

Admittedly, the Ninth Circuit, relying on Seventh Circuit authority, has recognized in a non-

precedential opinion that a standard instruction on the elements of a conspiracy to distribute a

controlled substance may be insufficient to inform the jury of a buyer-seller relationship if the

20

instruction, as here, does not explain (1) the difference between simply buying or selling the substance and conspiring with another individual to distribute it or (2) how a distribution differs from a purchase or sale. *U.S. v. Harris,* 65 F.3d 177, 1995 WL 497915, at *4 (9th Cir. August 16, 1995) (citing *United States v. Pedigo,* 12 F.3d 618, 623 (7th Cir. 1993)) (unpublished).  Under these circumstances, a buyer-seller instruction should be given by the court if it is integral to the defense theory and supported by evidence, even if there is evidence to support the finding of a conspiracy. *Id*.  But again, a buyer-seller relationship theory was never raised by the defense, and Petitioner has not explained how the evidence would have permitted a reasonable trier of fact to find only the existence of a buyer-seller relationship.  Therefore, Petitioner cannot show there was a reasonable probability the verdict would have been different had the instruction been requested and given.

Lastly, under this claim Petitioner contends counsel failed to move for acquittal or a new trial or challenge venue for the charged conspiracies.  Petitioner has presented no argument or evidence to show how counsel's failure to do any of these things amounted to ineffective assistance.

**13. Violation of the Speedy Trial Act/abuse of grand jury process** – Petitioner further contends Mullins was ineffective because he failed to move for dismissal of the third superseding indictment on ground of a speedy trial violation even though Petitioner was not tried within a seventy-day period from the later of the date of his original indictment or initial appearance.  The Speedy Trial Act (STA, 18 U.S.C. §§ 3161 et seq.), provides in pertinent part: "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).  "This rule," however, "is tempered by the [STA's] exclusion of certain periods of time from the 70-day calculation." *U.S. v. Messer,* 197 F.3d 330, 336 (9th Cir. 1999).  For example, section 3161(h)(7)(A) excludes from computation of time within which an indictment must be filed

"[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).  The Court has reviewed the record and finds the continuances granted by the trial court, resulting in 803 days between the filing date of Petitioner's original indictment and the trial, were made pursuant to a finding one or more of the exclusions in section 3161 applied. *See* 18 U.S.C. § 3161(h)(1)-(8).  Accordingly, Petitioner's rights under the STA were not violated and there was no basis upon which Mullins could have moved to dismiss pursuant to the STA.  Mullins's failure to request such a dismissal could therefore not have constituted ineffective assistance. Petitioner further suggests counsel was ineffective in advising him to waive his speedy trial rights, but provides no argument or evidence to explain how this was the case.  The record shows nearly all of the delay was excludable time, necessitated by multiple substitutions of attorney; resolution of discovery motions; and return of superseding indictments.  It would not have been unreasonable for counsel to advise Petitioner to waive his speedy trial rights under these circumstances.

Petitioner's claim also fails for other reasons.  "In determining whether to dismiss a case with or without prejudice, 'the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the STA] and on the administration of justice." *U.S. v. Medina,* 524 F.3d 974, 986 (9th Cir. 2008) (quoting 18 U.S.C. § 3162(a)(1)).  A finding that the crime is serious weighs in favor of a dismissal without prejudice and is sufficient by itself to permit reprosecution.  *Id*. at 986-87.  In the Court's view, the seriousness of the crimes at issue here suggests that even if an STA violation had occurred, any motion counsel might have filed to dismiss the indictment would have been granted without prejudice by the trial court.  Because the government would have been permitted to re-indict Petitioner, counsel could reasonably have believed that filing such a motion would have been a waste of time and effort. *See Bucci v. U.S.,* 662

1    F.3d 18, 31 (1st Cir. 2011) ("Even if reasonably competent counsel under the 'prevailing

2    professional norms' would have [recognized] a potential Sixth Amendment violation . . . , we think

3    that, under the applicable objective standard, competent counsel could have knowingly and

4    reasonably declined to raise the constitutional issue in this case because doing so would be a waste

5    of the defense's time, energy and resources").  That the government would likely have been able to

6    re-indict Petitioner further suggests Petitioner cannot demonstrate a more favorable outcome – and

7    hence prejudice – from counsel's failure to seek dismissal of the indictments under the STA.

8           Petitioner further contends his speedy trial rights were violated because "the superseding

9    indictments did not create a new case with its own independent identity" and "under double jeopardy

10   principles, the charges in [the] superseding indictments . . . were required to be joined with the

11   original charges because authorities already possessed this information."  The argument presented

12   here, in essence, is that the speedy trial window should have been calculated from the date of

13   Petitioner's initial indictment, and that the filing of the superseding indictments did not reset the

14   speedy trial clock.  Petitioner correctly observes that the government cannot reset the speedy trial

15   clock simply by re-indicting a defendant for the same offense.  *U.S. v. Bermea,* 30 F.3d 1539, 1567

16   (5th Cir. 1994) (citing *U.S. v. Gonzalez,* 897 F.2d 1312, 1316 (5th Cir. 1990), *cert. denied,* 498 U.S.

17   1029, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991)) ("The filing of a superseding indictment does not

18   affect the speedy trial clock for offenses charged in the original indictment or any offense required

19   to be joined under double jeopardy principles.  The clock continues to run from the original

20   indictment or arraignment, whichever was later, and all speedy trial exclusions apply as if no

21   superseding indictment had been returned.  This prevents the government from circumventing the

22   speedy trial guarantee through the simple expedient of obtaining superseding indictments with minor

23   corrections"); *see U.S. v. Hoslett,* 998 F.2d 648, 658 (9th Cir. 1993) ("While a superseding

24   indictment requires a rearraignment, it does not create a new case with its own, independent identity

25   . . . . [¶] . . . [W]hen a superseding indictment is filed there is only one criminal action").

26   Problematically for Petitioner, no argument or evidence has been provided to explain what effect,

27

28                                                      23

1    if any, the filing of the superseding indictments might have had on the STA calculation.  Even if the

2    Court were to accept Petitioner's proposition that the speedy trial clock was not reset by the filing

3    of the superseding indictments, nothing suggests that more than 70 non-excluded days transpired

4    between the August 20, 1998 filing of the initial indictment and the October 31, 2000 trial date.

5            Lastly, Petitioner contends trial counsel were ineffective in not moving to quash the three

6    superseding indictments based upon expiration of the grand juries' terms under Federal Rule of

7    Criminal Procedure 6(g), which provides: "A grand jury must serve until the court discharges it, but

8    it may serve more than 18 months only if the court, having determined that an extension is in the

9    public interest, extends the grand jury's service.  An extension may be granted for no more than 6

10   months, except as otherwise provided by statute."  Fed. R. Civ. P. 6(g).  Petitioner has presented no

11   argument or evidence to show that the grand juries acted outside of their allowable service time

12   under Rule 6(g) in returning the various indictments.  Therefore, Petitioner's claim is meritless.

13

14   ***15. Sentencing issues*** – Petitioner further contends assistance was ineffective because counsel did

15   not raise any objections at Petitioner's sentencing hearing to certain findings contained in the written

16   presentence investigation report ("PSIR") prepared by probation that were used to calculate

17   Petitioner's offense level and criminal history category.  As noted above, Petitioner was sentenced

18   to a term of life on each of the first two counts.  This sentence was predicated on the applicable

19   guidelines for violations of 21 U.S.C. §§ 841(a)(1) and 846 as specified in the drug quantity table,

20   section 2D1.1(c)(1), of the 2000 edition of the United States Sentencing Guidelines manual.

21           The drug quantity attributed to Petitioner by the PSIR was 850 kilograms of cocaine.

22   Consequently, Petitioner was assigned a base offense level of 38.  *See* U.S.S.G. § 2D1.1(c)(1) (2000)

23   (base offense level of 38 for offenses involving 150 kilograms or more of cocaine).  Petitioner first

24   contends counsel should have objected to the 850 kilograms of cocaine attributed to Petitioner as

25   being insufficiently supported by the evidence.  The Court has reviewed the record and finds

26   sufficient evidence to support the 850 kilogram assessment.  Thus, the PSIR's recommendation was

27

28                                                         24

proper and counsel did not act unreasonably in failing to object to the quantity of cocaine for which Petitioner was ultimately held responsible.   In any event, all offenses involving at least 150 kilograms of cocaine warrant a base offense level of 38.   U.S.S.G. § 2D1.1(c)(1).   That is to say, whether Petitioner was responsible for 150 kilograms or 850 kilograms would have made no difference to his base offense level.   Absent argument or evidence to show Petitioner was somehow responsible for fewer than 150 kilograms, which was not provided here, Petitioner cannot show the results of the sentencing would have been different had counsel objected to the 850 kilogram finding.   Petitioner suggests that because the jury, in its November 9, 2000 verdict, found the quantity of cocaine involved to be simply "[f]ive (5) kilograms or more" without further elaboration, Petitioner should not have been sentenced for an amount in excess of five kilograms.   Petitioner has provided no authority – and the Court's research reveals no authority – to support this proposition.

Petitioner further contends counsel was ineffective for failing to object to findings in the PSIR that (1) Petitioner had a role as an organizer of the criminal activities, which generated a four-level increase to his offense level; and (2) firearms were possessed in connection with the activities, which generated a two-level increase to his offense level.   *See* U.S.S.G. §§ 3B1.1(a) (four-level enhancement applies "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive"); 2D1.1(b)(1) (two-level enhancement applies "[i]f a dangerous weapon (including a firearm) was possessed").   Petitioner contends in conclusory fashion that he did not organize or lead any criminal activity that involved five or more participants or was extensive, and that no firearms were connected to the alleged drug trafficking.   However, Petitioner provides no argument or evidence to explain how this was the case. The Court has reviewed the record and finds sufficient evidence to support a finding Petitioner organized and led criminal activities involving at least five participants and possessed firearms in connection with those activities.   In light of this evidence, it was not unreasonable for counsel not to object to the PSIR's findings or the application of 3B1.1 and 2D1.1 sentencing enhancements.

Lastly, Petitioner contends counsel were ineffective for failing to object to the criminal

history category assigned to him by the PSIR.  In particular, Petitioner contends several criminal

history points were added for offenses that were not felonies, but misdemeanors, and that some of

his prior offenses should have been treated as one offense for the purpose of computing the criminal

history category because they arose out of related cases.  Even if Petitioner could successfully

challenge all of the criminal history points which he was assigned, Petitioner cannot demonstrate

prejudice from counsel's failure to object to them.  As noted above, the PSIR's calculation began

with a base offense level of 38.  The PSIR then added four levels for the organizer role and two

levels for the firearms, resulting in a total offense level of 44.  The result was subsequently reduced

to an offense level of 43, the highest level specified in the sentencing table.  Problematically for

Petitioner, at offense level 43, the advisory guideline range is life imprisonment regardless of the

criminal history category.  *See* U.S.S.G. Ch. 5, Pt. A.  Thus, the result of the sentencing would not

have been different had counsel persuaded the trial court to adjust the criminal history category.

**16. Failure to challenge prior convictions** – Petitioner further contends counsel were ineffective

for failing to attack the validity of two prior convictions used to enhance Petitioner's sentence

pursuant to sections 851 and 841(b)(1)(a).  Not so.  First, the information filed by the government

on October 17, 2000 charging Petitioner with a prior offense pursuant to section 851 alleged only

one offense for which Petitioner had previously been convicted:  attempted possession of cocaine

for sale in violation of California Penal Code § 664 and Health and Safety Code § 11351.  Second,

Petitioner has provided no argument or evidence to suggest how this conviction was invalid.  Thus,

counsel could not have been ineffective for failing to challenge the conviction's validity.

        Petitioner further contends that because he did not receive a prison sentence of more than one

year for his prior conviction, but was put on probation, the conviction could not have served as a

predicate for statutory enhancement under section 841(b)(1)(A).  There is no merit to this contention.

The enhancement provision in the version of section 841 effective at the time of Petitioner's

sentencing stated in pertinent part: "If any person commits such a violation after a prior conviction

for a *felony drug offense* has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment . . . ." 21 U.S.C. § 841(b)(1)(A) (2000) (emphasis added).  In *Burgess v. U.S.,* 553 U.S. 124, 128 S.Ct. 1572, 170 L.Ed.2d 478 (2008), the Supreme Court held that "[t]he term 'felony drug offense' contained in § 841(b)(1)(A)'s provision for a 20-year minimum sentence . . . is defined exclusively by [21 U.S.C.] § 802(44)[.]" *Id.* at 127.  In fact, the Ninth Circuit, in *U.S. v. Martinez,* 182 F.3d 1107, 1113 n. 16 (9th Cir. 1997), had already looked to section 802(44) to define "felony drug offense" for the purpose of section 841 enhancement several years before Petitioner's sentencing.  Therefore, the trial court was bound by the section 802(44) definition.  At the time of Petitioner's sentencing, section 802(44) provided: "The term 'felony drug offense' means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana [sic], or depressant or stimulant substances." 21 U.S.C. § 802(44) (2000).  "A state drug offense punishable by more than one year therefore qualifies as a 'felony drug offense,' even if state law classifies the offense as a misdemeanor." *Burgess, supra,* 553 U.S. at 127.  Again, Petitioner's prior conviction was for attempted possession of cocaine for sale in violation of California Health and Safety Code § 11351, which previously stated a violation of its provisions "shall be punished by imprisonment in the state prison for two, three, or four years." Cal. Health & Saf. Code, § 11351 (2000).  Because Petitioner's prior offense was punishable by more than one year in prison, it qualified as a felony drug offense and was sufficient to serve a predicate for statutory enhancement under section 841(b)(1)(a).

***17-20.  Miscellany*** – As his final four points, Petitioner contends in shotgun fashion: (1) "[t]rial and appellate counsel failed to object to the sentence imposed under Section 841(b)(1)(A), the maximum term was life"; (2) "[t]rial and appellate counsel failed to require that [Petitioner's] sentence be imposed under Section 841(b)(1)(C), the maximum term was 20 years, in the alternative, sentence be imposed for possession [without intent to distribute] having two or more prior convictions under

Section 844, the maximum term was three years"; (3) "[t]rial and appellate counsel failed to challenge sentence exceeding 20 years constitutes 'plain error affecting substantial rights, seriously affecting the fairness or public reputation of judicial proceedings; Mullins and appeal attorney failed to argue that life sentences imposed violated Fed.R.Crim.P. 52"; and (4) "[t]rial and appellate counsel failed to attack the 'stacking provisions' under U.S.S.G. § 5G1.2(d) as unconstitutional on face, or unconstitutionally applied to [Petitioner] . . . . ; in the alternative, Mullins failed to raise the unconstitutionality of Section 5G1.2(d) stacking resulting in ineffective assistance of counsel, denial of counsel and miscarriage of justice." These arguments are predicated exclusively on Petitioner's contentions that the evidence showed he did not have the intent to distribute cocaine; that he simply possessed cocaine; that he came to possess the cocaine out of necessity; and that the only conspiracies were multiple unindicted conspiracies of which he was not a member. The Court has already addressed these contentions in the foregoing sections of this order and found them to be without merit. Therefore, the arguments Petitioner raises now are similarly without merit.

## V. DISPOSITION

Based on the foregoing, the motion of petitioner Victor Lamont Brown to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is DENIED.

IT IS SO ORDERED.

Dated:   April 19, 2012                    _____

                                          CHIEF UNITED STATES DISTRICT JUDGE